UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Marvin Lumber and Cedar Company, *et al.*,

       Plaintiffs,

v.

Sapa Extrusions, Inc.,

       Defendant.

Civ. No. 10-3881 (RHK/LIB)
**MEMORANDUM OPINION**

---

Sapa Extrusions, Inc.,

       Third-Party Plaintiff,

v.

The Valspar Corporation,

       Third-Party Defendant.

---

Andrew K. Fletcher, Evan A. Bloch, Richard M. Weibley, Pepper Hamilton LLP, Pittsburgh, Pennsylvania, John W. Ursu, Robert J. Gilbertson, Sybil L. Dunlop, Greene Espel PLLP, Minneapolis, Minnesota, for Third-Party Plaintiff Sapa Extrusions, Inc.

Richard Ihrig, Meghan M. Elliott, David A. Allgeyer, John C. Ekman, Bryan R. Freeman, Lindquist & Vennum LLP, Minneapolis, Minnesota, for Third-Party Defendant The Valspar Corporation.

---

## INTRODUCTION

Plaintiff Marvin Lumber and Cedar Company ("Marvin")[1] manufactures windows, doors, and related products. For more than ten years it purchased painted aluminum

---

[1] There are two named Plaintiffs in this case – Marvin Lumber and Cedar Company and Marvin

extrusions[2] (also called "lineals") from Defendant Sapa Extrusions, Inc. ("Sapa"),[3] which it used to make aluminum-clad windows and doors. Customers who installed these products in coastal locations eventually began to complain that the products were losing paint adhesion, and Marvin undertook extensive (and expensive) repairs. It commenced this action against Sapa in 2010, seeking to recoup its repair costs; it asserted breach of contract, breach of express and implied warranties, fraud, and similar claims. Sapa later asserted third-party claims against Valspar Corporation ("Valspar"), its paint supplier, for contribution and indemnity.

The parties undertook extensive discovery lasting more than two years, and with that discovery complete, each moved for summary judgment in whole or in part. The Motions were fully and thoroughly briefed, and the Court heard oral argument on July 18, 2013. Mindful of the parties' preparations for the quickly approaching trial date, the Court issued a short Order (Doc. No. 474) on July 22, 2013, disposing of Marvin's, Sapa's, and Valspar's Motions. Of relevance here, the Court granted Valspar's Motion and dismissed Sapa's Third-Party Complaint. The Court now issues this Memorandum Opinion setting forth the reasons for that decision.

---

Windows of Tennessee, Inc. – but the parties refer to them as "Marvin" and treat them as a single entity, and the Court will do the same.

[2] An "extrusion" is a piece of material that has been pushed through a die in order to form it into a particular shape.

[3] Sapa previously was known as Alcoa Extrusions, Inc. and Alumax, Inc. For simplicity, the Court refers to all of these entities as "Sapa," and it has replaced the terms "Alcoa" and "Alumax" with "Sapa" when referencing evidence in the record.

## BACKGROUND

The background in this case has been thoroughly discussed in several prior Orders issued by Magistrate Judge Brisbois and need not be repeated here.[4] Facts are recited below only as necessary to understand the Court's decision on the instant Motion and, where recited, are taken in the light most favorable to Sapa (the non-moving party).

## STANDARD OF DECISION

Summary judgment is proper if, drawing all reasonable inferences in favor of the nonmoving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Ricci v. DeStefano, 557 U.S. 557, 586 (2009). The moving party bears the burden of showing that the material facts in the case are undisputed. Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). The Court must view the evidence, and the inferences that may be reasonably drawn from it, in the light most favorable to the nonmoving party. Beard v. Banks, 548 U.S. 521, 529–30 (2006); Weitz Co. v. Lloyd's of London, 574 F.3d 885, 892 (8th Cir. 2009). The nonmoving party may not rest on mere allegations or denials, but must show through the presentation of admissible evidence that specific facts exist creating a genuine issue of material fact for trial. Fed. R. Civ. P. 56(c)(1)(A); Wood v. SatCom Mktg., LLC, 705 F.3d 823, 828 (8th Cir. 2013).

---

[4] For a full discussion of the facts leading up to the instant case and a history of the litigation, the reader is referred to Document Numbers 63, 97, 107, 164, 206, 223, and 314.

## ANALYSIS

Despite the mountains of documents submitted by the parties and their copious briefing on the issues, at bottom Valspar's Motion can be easily resolved. The reason is simple. To parrot Valspar's counsel at oral argument, Valspar simply cannot lose – "if Sapa wins, Valspar wins, [and] [i]f Sapa loses, Valspar wins." (7/18/13 Hear. Tr. at 68.) The nature of the claims asserted by Sapa against Valspar and, in turn, the nature of Marvin's claims against Sapa render this conclusion apparent.

Sapa brought two claims in its Third-Party Complaint against Valspar: contribution and indemnity. In each, it seeks to pass on to Valspar any liability that may be assessed against it on Marvin's claims. (See Third-Party Compl. ¶ 34 ("If Sapa is found liable to Marvin for damages resulting from corrosion in Marvin's windows, then Valspar is liable to Sapa for the entire amount of damages for which Sapa is found liable."); id. ¶ 43 ("Sapa is . . . entitled to contribution from Valspar for any damages for which Sapa may be found liable.").) Hence, if Sapa defeats Marvin's claims at trial, no contribution or indemnification would be necessary (or appropriate), and accordingly Valspar, too, would "win."

But the same is true even if Sapa were to *lose* on Marvin's claims, because those claims have nothing to do with Valspar. Although the lineals Marvin purchased from Sapa incorporated Valspar's paint, Marvin does not allege any defects in that paint. Rather, Marvin's claims hinge on the paint's *application* – application that was undertaken by Sapa alone. (See Marvin Mem. (Doc. No. 415) at 5 ("Marvin alleges that *failures in Sapa's pretreatment process* caused some of the [lineals] to fail to perform as

agreed and warranted. Specifically, many of the [lineals] were improperly or insufficiently pretreated.") (emphasis added) (citations omitted); Marvin Reply Mem. (Doc. No. 467) at 6 ("Sapa warranted that it would *properly apply the pretreatment and paint* such that [the lineals] would perform in the field for 10 years.") (emphasis added).) Simply put, Marvin's entire case "is predicated on the [allegation] that Sapa warranted *the [paint] application process*." (Marvin Reply Mem. (Doc. No. 467) at 6 (emphasis added).)

Therein lies the rub. Sapa's brief tries again and again to turn Marvin's claims into something they are not – claims against Valspar. It argues that "Valspar is the only party that made promises regarding finish failures on Marvin [lineals]." (Sapa Mem. (Doc. No. 450) at 2.) It argues that "Marvin's performance warranty claim is based on Valspar's warranty." (Id. at 14.) It argues that "Marvin is seeking to recover from Sapa based on Valspar's warranty, [which] is Valspar's sole responsibility." (Id. at 28; accord, e.g., id. at 16 (The "performance warranty that Marvin describes was issued by *Valspar*, not Sapa.") (emphasis in original); id. at 32 n.111 ("[I]n the event Marvin . . . ultimately recovers . . ., [] this liability should be Valspar's sole responsibility as the party that issued the warranty.").) It continued down the same path at oral argument, contending that "Marvin has asserted claims against Sapa [but] it is . . . referring to . . . promises made by Valspar." (7/18/13 Hear. Tr. at 69; see also id. at 71.)

Yet try as it might, Sapa cannot alter the nature of Marvin's claims. Marvin is *not* suing Sapa on any warranty provided by *Valspar*. Rather, the warranty in question is a *separate* one (allegedly) provided directly and exclusively by Sapa – Sapa would

-5-

properly pretreat the lineals and apply Valspar's paint – and thus, in order for it to prevail, Marvin must show that Sapa breached this separate warranty. Doing so simply would not implicate Valspar.[5]

Sapa tries to avoid this by arguing that Valspar *was* involved in the pretreatment and painting process, because it "certified" Sapa to apply its paint and periodically tested painted lineals to determine whether they met Marvin's specifications. (Sapa Mem. (Doc. No. 450) at 28-31.) But even Sapa acknowledges that the "certification" merely described Sapa's *capabilities* and did not guarantee that every lineal it manufactured would be properly pretreated and painted. (See id. at 29 (certification indicated that Sapa was "*capable* of applying Valspar's coatings to" specification) (emphasis added); see also id. at 30 (noting that Marvin's understanding of the certification was that "Sapa was "*capable*" and "*could properly*, with the pretreatment process, apply the coating and meet specifications") (emphases added).) Indeed, John Clifton, the manager of Sapa's Yankton, South Dakota facility (which produced the lineals), testified in his deposition that Sapa did not rely upon Valspar's expertise for its pretreatment process. (See Clifton Dep. at 318-19; see also White Dep. at 240-41 (noting that it was Sapa's "job to make sure that – that the pretreatment is done properly").) Along those same lines, while Valspar admittedly performed occasional tests (roughly once per month) on exemplar lineals provided by Sapa, Sapa recognizes that such testing was intended simply to show that "product quality *is in the ballpark of where it needs to be*" (Sapa Mem. (Doc. No.

---

[5] Indeed, this is driven home by the terms of the warranty Valspar *did* provide, which is effective only if Valspar's paint has been "properly applied." (Ihrig Aff. (Doc. No. 439) Ex. 6, ¶ 1.)

450) at 9 (emphasis added)); it was not, nor could it be, a guarantee that every lineal met Marvin's specifications.

In any event, Valspar's so-called "involvement" in the pretreatment process would not alter the analysis. There is no dispute Valspar *did* extend Sapa a warranty regarding "the use of [its] coatings at [Sapa's] plant . . . for use on Marvin Window extrusions." (Ihrig Aff. (Doc. No. 439) Ex. 6.) That warranty expressly limited Valspar's liability to *warranty claims* based on the failure of its paint – Valspar assumed "no other liability," including for claims based on "negligence or any other legal theory." (Id. ¶ 8.) But here, Sapa *denies* bringing a warranty claim against Valspar (see Sapa Mem. (Doc. No. 450) at 31), and any claim based on Valspar's certification or testing would, at best, sound in negligence – which is expressly disclaimed by the terms of Valspar's warranty.

The Court need not proceed further. Sapa's claims present the rare case of, "Heads I win, tails you lose." If Marvin is unsuccessful on its claims against Sapa, there would be no basis (or need) for Sapa to seek contribution or indemnity from Valspar. And if Marvin *is* successful on its claims against Sapa, it will have necessarily proved that Sapa's liability was based on its conduct alone – meaning there also would be no basis to seek contribution or indemnity from Valspar. For these reasons, and based on the all files, records, and proceedings herein, the Court has granted Valspar's Motion for Summary Judgment.

Dated: August 2, 2013  s/Richard H. Kyle
RICHARD H. KYLE
United States District Judge